**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

CARMOUCHE INSURANCE, INC. CIVIL ACTION

VERSUS NO. 14-00061-SDD-SCR

ASTONISH RESULTS, LLC F/K/A
ASTONISH RESULTS, L.P.,
DAVID BUCKLEY, AND
CREEKRIDGE CAPITAL, LLC

**RULING**

Before the Court is a *Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a), or, Alternatively, Motion to Dismiss*[1] filed by Defendant, Astonish Results, LLC, and a *Motion to Transfer Venue Pursuant to 28 U.S.C. §1404(a) and Motion to Sever Pursuant to Fed.R.Civ.P. 21*[2] filed by Defendant, Creekridge Capital, LLC. Carmouche Insurance, Inc. filed *Opposition Memoranda*[3] to both motions; Creekridge also filed a memorandum[4] opposing transfer of the entire case to Rhode Island. Defendants have filed supplemental memoranda[5] in support of their respective motions. Thereafter, Carmouche filed a notice[6] partially withdrawing its oppositions to the transfer of the action to either Minnesota or Rhode Island, but not to both. The Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1332. For the following reasons, Astonish's *Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a)* and Creekridge's

[1] Rec. Doc. 4.
[2] Rec. Doc. 7.
[3] Rec. Docs. 18 and 19.
[4] Rec. Doc. 15.
[5] Rec. Docs. 23 and 33.
[6] Rec. Doc. 34, *Notice of Partial Withdrawal of Oppositions to Transfer*. Carmouche did not withdraw its oppositions to the extent Astonish sought dismissal of Carmouche's claims, or to the extent Creekridge sought to sever Carmouche's claims into two separate actions. Astonish filed a *Response* to Carmouche's Notice. Rec. Doc. 35.

*Motion to Transfer Venue Pursuant to 28 U.S.C. §1404(a) and Motion to Sever Pursuant to Fed.R.Civ.P. 21* shall be granted.

## I. BRIEF BACKGROUND PROCEDURAL HISTORY

Carmouche[7], a Louisiana insurance agency, and Astonish[8], a Delaware limited liability company, entered into a Website Development, Design, and Marketing Equipment and/or Software License Agreement ("Marketing Agreement") on May 29, 2012. According to the Marketing Agreement[9], Astonish agreed to provide Carmouche with website design, marketing, social media, and search engine optimization services. Notably, the Marketing Agreement contained the following forum selection clause:

> This Agreement shall be governed by, and construed in accordance with the laws of the State of Rhode Island excluding its conflict of law rules. All actions and proceedings, interpretations, and any matters regarding enforceability or effect arising out of or relating to this Agreement shall be brought in any Rhode Island state or federal court sitting in the City of Providence, Rhode Island.[10]

In addition to the Marketing Agreement, Carmouche also entered into a separate Lease Agreement (Lease Number 1193500-001) with Defendant, Creekridge Capital, LLC (Creekridge)—a financial services company that leased specific equipment and software to Carmouche.[11] The Lease Agreement contained the following choice of law and exclusive jurisdiction clause:

---

[7] Carmouche is a Louisiana corporation with its principal place of business in Louisiana. Rec. Doc. 1, pp. 1; Rec. Doc. 1-2, pp. 1 and 3; Rec. Doc. 2, p. 3; Rec. Doc. 2-2, pp. 1 and 3.

[8] Rec. Doc. 1, p. 3; Rec. Doc. 1-2, p. 1; Rec. Doc. 2, p. 3; Rec. Doc. 2-2, p. 1. Astonish is a foreign limited liability company formed under the laws of the State of Delaware, and no member of Astonish is a citizen of the State of Louisiana or the State of Minnesota. Rec. Doc. 1-3; Rec. Doc. 2-4.

[9] Rec. Doc. 1-2; Rec. Doc. 2-2; Rec. Doc. 16.

[10] Rec. Doc. 4-2, p. 2, ¶15.

[11] Rec. Doc. 1-2 and Rec. Doc. 2-2, p. 2; Rec. Doc. 16. Creekridge is a foreign limited liability company formed under the laws of the State of Minnesota, with its principal place of business in Minnesota. Rec. Doc. 6, p. 27. Creekridge has only two members, both citizens of the State of Minnesota. Rec. Doc. 1, p.

> **CHOICE OF LAW**: THIS AGREEMENT WILL BE GOVERNED BY, ENFORCED IN AND INTERPRETED ACCORDING TO THE LAWS OF THE STATE OF MINNESOTA. YOU CONSENT TO EXCLUSIVE JURISDICTION IN THE STATE OR FEDERAL COURTS OF MINNESOTA.[12]

At some point after entering these contractual agreements, Carmouche became dissatisfied with the services it had received and sued Astonish, Creekridge, and David Buckley, one of Astonish's salespersons, in Louisiana state court.[13] Carmouche asserts fraud in the inducement claims against all three Defendants and seeks to recover attorneys' fees and punitive damages from them. Additionally, Carmouche has alleged breach of contract claims against both Astonish and Creekridge and seeks declaratory relief and rescission of the Marketing and Lease Agreements. Independent claims for breach of fiduciary duty and breach of covenant of good faith and fair dealings were also made against Astonish.

On January 30, 2014, Astonish timely removed the lawsuit to federal court; Creekridge consented to the removal.[14] Considering the forum selection clause in the Marketing Agreement between Astonish and Carmouche, Astonish now moves for the Court to transfer this case to Rhode Island. Relying on the choice of law provision in the Lease Agreement, Creekridge now seeks severance of Carmouche's claims against it and that they be transferred to Minnesota.

---

3; and Rec. Doc. 2, p. 3. David Buckley is an individual of age of majority and citizen of either California or Florida. Rec Doc. 1-2 and 2-2, p. 1; Rec. Doc. 1 and Rec. Doc. 2, p. 3.

[12] Rec. Doc. 6-1 (emphasis original). Exhibit to Creekridge's Answer and Counterclaim.

[13] Rec. Doc. 1-2; Rec. Doc. 2-2.

[14] Rec. Doc. 1 and Rec. Doc. 2. Creekridge joined in and consented to the removal. Rec. Doc. 1-3 and Rec Doc. 2-3. David Buckley, a former employee of Astonish, has not been served yet. Rec. Doc. 1-2 and Rec. Doc. 2-2, p. 26. Upon removal, Defendant Creekridge answered and filed its own counterclaims against Carmouche. Rec. Doc. 6. Additionally, Carmouche has filed its First Amended Complaint, and an Answer to Creekridge's counterclaims. Rec. Doc. Nos. 16 and 17, respectively.

## II. LAW AND ANALYSIS

### A. Motions to Transfer

Under 28 U.S.C. §1404(a), a district court may, for the convenience of the parties and witnesses and in the interest of justice, transfer any civil action to any other district or division where it might have been brought or to any district or division to which all of the parties have consented. A motion to transfer under 28 U.S.C. §1404(a) is the proper mechanism for evaluating the enforcement of federal forum-selection clauses.[15] As established by the Supreme Court in *Atlantic Marine Const. Co. v. U.S. Dist. Court for Western Dist. of Texas*, "a proper application of § 1404(a) requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.'"[16] The Court further explained that "[w]hen the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause. Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied."[17]

The first question on a Section 1404(a) motion is whether the lawsuit could have been filed originally in the destination venue. When a transfer of venue is sought based on a forum selection clause, however, the *Atlantic Marine* Court altered the typical analysis under 28 U.S.C. § 1404(a) in three specific ways.[18]

"First, the plaintiff's choice of forum merits no weight. Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that

[15] *Phi, Inc. v. Apical Industries, Inc.*, 2014 WL 1820717, at *7 (W.D. La. March 7, 2014).
[16] *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for the Western District of Texas*, 134 S.Ct. 568, at 579 (2013)(quoting *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, at 33 (1988)).
[17] *Id.* at 581.
[18] *Id.*

transfer to the forum for which the parties bargained is unwarranted."[19] Secondly, the court "should not consider arguments about the parties' private interests."[20] As noted by the *Atlantic Marine* Court "[w]hen parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation."[21] In other words, private-interest factors carry no weight in the Section 1404(a) analysis. "Third, when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a §1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules."[22] In support of its revised analysis, the Supreme Court placed great emphasis on the parties' expectations as memorialized in their contract:

> When parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations. A forum-selection clause, after all, may have figured centrally in the parties' negotiations and may have affected how they set monetary and other contractual terms; it may, in fact, have been a critical factor in their agreement to do business together in the first place. In all but the most unusual cases, therefore, 'the interest of justice' is served by holding parties to their bargain.[23]

Recently in *1-Stop Financial Service Centers of America, LLC v. Astonish Results, LLC*,[24] the district court for the Western District of Texas applied the *Atlantic Marine* analysis in a case that is strikingly similar, both factually and legally, to the case before this Court.[25]

---

[19] *Id.*
[20] *Id.* at 582.
[21] *Id.*
[22] *Id.*
[23] *Id*. at 583.
[24] The Court notes that counsel for Carmouche in the instant matter also represented the plaintiff in *1-Stop Financial Services Centers of America, LLC v. Astonish Results*. Interestingly, Carmouche does not address or attempt to differentiate the instant case from 1-Stop.
[25] *1-Stop Financial Service Centers of America, LLC v. Astonish Results, LLC*, 2014 WL 279669 (W.D.Tx. Jan. 23, 2014).

In *1-Stop*, the plaintiff, 1-Stop Financial, had also entered into a Marketing Agreement with Astonish and a separate Lender Agreement with Creekridge. Additionally, the two contractual agreements contained their own forum selection clauses designating Rhode Island as the designated forum governing the Marketing Agreement and Minnesota as the Lender Agreement's designated contractual forum. Ultimately, 1-Stop Financial became dissatisfied with the performance of the contracts and filed suit against Astonish and Creekridge in state court (Texas) despite the contractual choice of forum clauses. Thereafter, the state lawsuit was removed to federal court where Astonish and Creekridge sought the enforcement of the choice of forum clauses within their individual contractual agreements with 1-Stop Financial.

After determining that the lawsuit could have been filed in the United States District Courts for Rhode Island and Minnesota, the *1-Stop* court applied the *Atlantic Marine* test to determine whether 1-Stop Financial could satisfy its burden of establishing why transfer to either district court would be unwarranted. The court explained that the private interest factors asserted by 1-Stop Financial, specifically the cost of litigating in Rhode Island and Minnesota and difficulties accessing proof, would not be considered. The court acknowledged that, while the public interest factors asserted by 1-Stop Financial—the "egregious waste of legal resources" and local interest—were legitimate concerns, they did not "rise to a level sufficient to deny a motion to transfer."[26] Accordingly, the court found that 1-Stop Financial had not met its burden of showing that its case was so unusual that it should not be held to the forum selections clauses it had agreed to when it signed the contracts with Astonish and Creekridge.

[26] *Id*. at *6.

1-Stop Financial also argued that the forum selection clauses were invalid and unreasonable under the circumstances, because they were contained in contracts of adhesion, or "'form contracts offered on a take-or-leave basis by a party with stronger bargaining power to a party with weaker power.'"[27] As to the Marketing Agreement, 1-Stop Financial claimed that, if it had not signed up immediately, it would not have been able to buy Astonish's products or services; therefore, under this pressure, 1-Stop Financial signed the contract within five minutes of receiving it and without having the opportunity to review it. 1-Stop Financial made similar arguments about the terms of the Lender Agreement, as well as the following: "1-Stop became contractually obligated to enter the Lender Agreement when 1-Stop entered into the Marketing Agreement on September 13, 2012, a week before 1-Stop had even seen the Lender Agreement."[28] 1-Stop Financial further alleged that Creekridge was the only approved financing option and, had 1-Stop Financial refused to enter into the Lender Agreement, it would have been in breach of the Marketing Agreement.[29]

In rejecting 1-Stop Financial's argument, the court first explained that none of the *Haynesworth* factors had been satisfied to support a finding of unreasonableness.[30] Those factors include any of the following:

> (1) the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement 'will for all practical purposes be deprived of his day in court' because of the grave inconvenience and unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state.[31]

[27] *Id.*
[28] *Id.* at *8.
[29] *Id.*
[30] *Id.* at *7.
[31] *Id.* (quoting *Haynesworth v. The Corp.*, 121 F.3d 956, 962-63)(5th Cir. 1997)).

The *1-Stop* court found that the plaintiff had not alleged that the incorporation of the forum selection clause within either agreement was the product of fraud or overreaching, nor would 1-Stop be denied its day in court if the case were transferred to Rhode Island or Minnesota.[32] The court reasoned that 1-Stop Financial was "a sophisticated insurance agency, capable of making complicated business decisions. While those decisions may have proved poor, 1-Stop cannot now escape the terms of the agreements by claiming it had 'no choice. 1-Stop had a choice all along despite its protestations to the contrary.'"[33] The court also found that 1-Stop Financial had mischaracterized the relationship between the Marketing Agreement and the Lender Agreement, as the Marketing Agreement was devoid of any express requirement that 1-Stop had to enter into any finance agreement.[34]

Ultimately, the *1-Stop* court found that the choice of forum clauses in both the Marketing Agreement and the Lender Agreement were enforceable, and granted Astonish's motion to transfer to Rhode Island and Creekridge's motion to transfer to Minnesota. For similar reasons, the motions to transfer shall be granted in the instant matter.

**1. <u>Language and Scope of the contracts</u>**

Carmouche challenges the scope of the agreements at issue. Initially, Carmouche argues that the Marketing Agreement's forum selection clause is permissive and not mandatory. The pertinent language of the forum selection clause provides that "all actions and proceedings, interpretations, and any matters regarding enforceability or

---

[32] 1-Stop only offered arguments as to the first two of the four Haynesworth factors. *Id.* at *7.
[33] *Id.*
[34] The court also explained that such a requirement, in and of itself, would still not have demonstrated that the Lender Agreement was a contract of adhesion. Id. at 9.

effect arising out of or relating to this Agreement shall be brought in … Rhode Island." Where an agreement contains clear language, showing that jurisdiction is appropriate in a designated forum, the clause is mandatory.[35] The Court hereby finds that the term "shall" is clear language mandating venue; therefore, the Marketing Agreement's choice of forum clause is mandatory. Furthermore, the Court finds that this contractual language clearly encompasses the scope of Carmouche's allegations against Astonish.

The Court also finds no merit in Carmouche's argument that its claims exceed the choice of forum clause within the Lease Agreement. The Court finds that the allegations within Carmouche's own pleadings indicate that its claims do, in fact, arise out of the enforcement of the Lease Agreement. For instance, Carmouche has specifically alleged breach of contract pertaining to the Lease Agreement and seeks declaratory relief relating to and recession of the Lease. Hence, the Court finds that Carmouche's claims as to Creekridge arise out of the Lease Agreement and are, therefore, subject to the Lease Agreement's forum selection clause.

**2. <u>Enforceability of Forum Selection Clauses</u>**

At the outset, the Court finds that this lawsuit could have been brought in the District of Rhode Island and the District of Minnesota; a point that Carmouche fails to address. Carmouche fails to satisfy its burden of establishing that transfer to the District of Rhode Island and the District of Minnesota is unwarranted.

In weighing whether transfer is appropriate, the Court may only consider the public interest factors against enforcing the choice of forum clause. Therefore, the Court in conducting its analysis will place no weight on Carmouche's private interest arguments about the "irreparable prejudice" it would face, the attorney's fees and costs

[35] *Von Graffenreid v. Craig*, 246 F.Supp. 2d 553, at 560 (N.D.Tx. 2003).

that it would incur, and the unfair and unreasonable burden it would face litigating in two places. While the Court finds that the public interest factor of keeping the case in Louisiana because it involves a localized controversy is a legitimate point, this point, standing alone, is not enough to defeat the enforcement of the choice of forum clause.

To the extent Carmouche argues that the choice of forum clauses are unenforceable, it has made no attempt to show how any of the following *Haynesworth* factors exist to overcome the presumption of the clauses' validity: (1) the incorporation of the forum selection clauses into the Marketing and Lease Agreements was the product of fraud or overreaching; (2) that Carmouche "will for all practical purposes be deprived of his 'day in court' because of grave inconvenience or unfairness of the selected forum"; (3) the fundamental unfairness of the chosen law will deprive Carmouche of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state.

The Court finds no merit in Carmouche's argument that the forum selection clauses cannot be enforced because they were included in contracts of adhesion. Like the plaintiff in *1-Stop*, Carmouche mischaracterizes the nature of the relationship of the Marketing Agreement and the Lease Agreement. Carmouche argues that the "'Marketing Agreement expressly required it to enter a non-cancellable lease' and to 'execute all paperwork promptly upon request.'"[36] Carmouche further contends that Creekridge "was the only approved financing company option provided by Astonish to Carmouche."[37] Therefore, Carmouche maintains that refusal to enter the Lease

---

[36] Rec. Doc. 19, p. 7.
[37] Rec. Doc. 19, p. 7.

Agreement would have resulted in a breach of the Marketing Agreement. The identical argument was made in the 1-Stop case and was flatly rejected by the court:

> First, 1-Stop's characterization of the relationship between the Marketing Agreement and Lender Agreement is not accurate. The Marketing Agreement does not 'expressly require' 1-Stop to enter into a finance agreement. Instead, the Marketing Agreement clearly provides a choice: (1) enter into a financing agreement, or (2) pay fully upfront in cash. 1-Stop apparently chose the financing option. Second, even if the Marketing Agreement did require entering into the Lender Agreement, this still does not demonstrate that the Lender Agreement is a contract of adhesion. The fact remains 1-Stop was free to enter into—or not enter into—the Marketing Agreement.[38]

The Court adopts the *1-Stop* court's reasoning in rejecting Carmouche's contract of adhesion argument. The language of Astonish's Marketing Agreement continues to provide for the two payment options. Moreover, the simple fact remains that Carmouche, a sophisticated insurance company, had a choice to review the terms of the respective contracts and then to either enter into or walk away from them. If Carmouche failed to read the terms of the Marketing Agreement and the Lease Agreement, or failed to understand them, then Carmouche bears the blame.

Carmouche's contention that there are conflicting choice of forum clauses that are unreasonably prejudicial and burdensome to both Carmouche and the Court is unpersuasive. To the extent Carmouche claims it will be unreasonably prejudiced or burdened, these are private interest factors that carry no weight in the analysis. Further, the Court further finds that, contrary to Carmouche's unfounded assertion otherwise, this is not a situation where there are conflicting clauses governing a single dispute. Rather, this is a case involving two separate choice of forum clauses within

---

[38] *1-Stop Financial Service Centers of America, LLC*, 2014 WL 279669, at *9.

two separate contracts governing two different disputes and involving two unrelated Defendants.

Accordingly, the Court finds that the choice of forum clauses within the Marketing Agreement and the Lease Agreement are enforceable, and the motions for transfer filed by Astonish and Creekridge shall be granted.

**B. Creekridge's Motion to Sever**

Rule 21 of the Federal Rules of Civil Procedure permits a court to sever any claim against a party. Carmouche attacks Creekridge's request for a severance claiming that the request is only sought to multiply the parties' litigation costs and increase the burden on the judiciary by "forcing the parties to litigate the same facts and issues simultaneously in two separate districts."[39] It is Carmouche's position that its claims against Astonish and Creekridge arise out of the same transaction and are virtually identical and, therefore, severance is unwarranted.

Once again, the Court looks to the *1-Stop* decision for guidance, where this very issue was analyzed.[40] In rejecting a similar argument opposing Creekridge's motion for severance, the *1-Stop* court explained:

> 1-Stop opposes severance, arguing the claims against each of the Defendants arise out of the same transaction, severance would be a waste of judicial resources, and severance would severely prejudice 1-Stop. While 1-Stop may be correct on all of its contentions, the undisputed record in this case shows it signed two separate contracts with two separate forum selection clauses. Notwithstanding the fact these claims are interrelated and separating them forces two different courts to handle similar cases, this Court cannot override the parties' contractual agreements. Moreover, any inconvenience or prejudice imposed on 1-Stop, or any other private interest factor, is not [to] be considered in the

[39] *1-Stop Financial Service Centers of America, LLC*, 2014 WL 279669.
[40] *Id.* at *10.

> §1404(a) analysis given *Atlantic Marine*. 1-Stop could have avoided this entire dilemma if it had read and understood the contracts it signed.[41]

The Court finds that the*1-Stop* court's reasoning is applicable here and supports a finding in favor of severance. Carmouche cannot and has not denied the simple fact that it entered into two separate contracts with two separate forum selection clauses. Pursuant to *Atlantic Marine*, the Court may not consider the inconvenience and prejudice to the Carmouche, or any party, when considering a 28 U.S.C. §1404(a) motion. Moreover, the Court cannot override the parties' contractual agreements. Like the plaintiff in *1-Stop*, Carmouche could have avoided this dilemma if it had read and understood the contracts it signed. Therefore, because Carmouche's Marketing Agreement with Astonish requires disputes be handled in Rhode Island, and Carmouche's Lease Agreement with Creekridge requires disputes be handled in Minnesota, the Court shall grant Creekridge's motion to sever.

## III. CONCLUSION

Accordingly, Defendant Astonish Results, LLC's *Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a), or, Alternatively, Motion to Dismiss Pursuant to FRCP Rule 4(m)*[42] is hereby GRANTED IN PART and DENIED IN PART. The motion is granted to the extent Astonish seeks to transfer venue and denied to the extent it seeks dismissal.

---

41 *1-Stop Financial Service Centers of America, LLC v. Astonish Results, LLC*, 2014 WL 279669, at *10 (W.D.Tex. Jan. 23, 2014).
42 Rec. Doc. 4.

**IT IS FURTHER ORDERED** that Defendant Creekridge Capital, LLC's *Motion to Transfer Venue Pursuant to 28 U.S.C. §1404(a) and Motion to Sever Pursuant to Fed.R.Civ.P. 21*[43] are hereby GRANTED.

**IT IS FURTHER ORDERED** that Plaintiff Carmouche Insurance, Inc.'s claims against Defendants, Astonish Results, LLC and David Buckley, are SEVERED from its claims against Defendant, Creekridge Capital, LLC.

**IT IS FURTHER ORDERED** that the Clerk shall transfer this case as it pertains to those claims brought by Plaintiff Carmouche Insurance, Inc. against Defendants, Astonish Results, LLC and David Buckley, to the United States District Court for the District of Rhode Island.

**IT IS FURTHER ORDERED** that the Clerk shall transfer this case as it pertains to claims brought by Plaintiff Carmouche Insurance, Inc. against Defendant, Creekridge Capital, LLC, to the United States District Court for the District of Minnesota.

Signed in Baton Rouge, Louisiana, on June 17, 2014.

Shelly D. Dick

**JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

[43] Rec. Doc. 7.